UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TRUSTEES OF MEASE HOSPITAL,
INC., d/b/a Mease Countryside Hospital,

                    Plaintiff,

v.                                                    CASE NO. 8:09-CV-1795-T-23MAP

KATHLEEN SEBELIUS, Secretary of
the United States Department of Health
and Human Services,

                    Defendant.
_____/

## REPORT AND RECOMMENDATION

This dispute focuses on a specific aspect of Medicare's scheme in the processing of a $1,645.00 claim – the decision to reopen that claim to determine if Medicare overpaid Mease Countryside Hospital ("Mease").  Although Mease admits being overpaid and recognizes that the regulations do not allow for administrative review of the reopening decision, it nonetheless complains about the administrative process for ferreting out the overpayment.  In short, it contends not only that the process was administratively faulty but that the regulatory scheme violates the Fifth Amendment's Due Process Clause both facially and as applied.  For the reasons stated, I find these arguments without merit.

*A.  Medicare framework*

Established in 1965, Medicare operates as a federally-subsidized health insurance program providing payment for medical care for those individuals who qualify.  *See* 42 U.S.C. § 1395 *et seq.*; *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 506 (1994).  The Medicare program is administered through the Centers for Medicare and Medicaid Services ("CMS"), a

component of the Department of Health and Human Services.  Under Part A of Medicare, a covered individual can receive payment for inpatient hospital services and, under Part B, for physician services and outpatient services, among other things.  *See id.* at §§ 1395c-1395w.  In implementing the Medicare program, Congress authorized the Secretary to promulgate regulations and make initial determinations with respect to benefits under Part A or Part B regarding whether an individual is entitled to benefits, the amount of benefits available to the individual, and whether payment may not be made, or may no longer be made, for an item or service.  *Id.* at §§ 1395ff(a)(1), 1395hh(a).

To that end, the Secretary, through CMS, contracts with Medicare contractors, known as fiscal intermediaries ("FI")[1] during the time period at issue, to perform the audit and payment functions for the Medicare program.  *See id.* at § 1395kk-1.  Payment pursuant to Medicare involves a multi-layer review beginning with a request by a provider, such as a hospital, for payment from a FI.  The FI issues an initial determination as to payment, including but not limited to whether an individual is entitled to benefits and the amount of the benefits available.  *Id.* at § 1395ff(a); 42 C.F.R. §§ 405.920, 405.924.  A provider dissatisfied with the initial determination may request the FI perform a redetermination.  42 U.S.C. § 1395ff(a)(3); 42 C.F.R. § 405.940.  During the redetermination stage, the FI will conduct an independent review of the initial determination.  42 C.F.R. § 405.948.  After reviewing the evidence and findings upon which the initial determination was based, as well as any additional evidence submitted by the parties or that the contractor obtains on its own, the FI renders a decision affirming or reversing, in whole or in part, the revised initial determination.  *Id.* at §§ 405.948, 405.954.  The

---

[1]  Given the number of acronyms used in this Report for the various administrative entities involved in the regulatory scheme, an appendix is provided identifying those entities and their associated acronyms.

FI may raise and develop any new issues relevant to the claim at issue.  *Id.* at § 405.948.  A party to a redetermination dissatisfied with that decision may appeal the adverse redetermination decision to a Qualified Independent Contractor ("QIC") for a reconsideration.  42 U.S.C. § 1395ff(c); 42 C.F.R. § 405.960.  After the QIC renders its decision, a party may appeal an adverse reconsideration decision and request a hearing before an administrative law judge ("ALJ").  42 U.S.C. § 1395ff(d)(1); 42 C.F.R. §§ 405.1000, 405.1002.  Subsequently, a party may request the Medicare Appeals Council ("MAC") review the ALJ's decision.  42 U.S.C. § 1395ff(d)(2); 42 C.F.R. § 405.1100.  The MAC conducts a *de novo* review of the ALJ's decision considering all the evidence of record and may adopt, modify or reverse the ALJ's decision or remand the case to an ALJ for further proceedings.  42 C.F.R. § 405.1100(c).  The decision of the MAC constitutes the final decision of the Secretary.  42 C.F.R. § 405.1130.  Accordingly, a party dissatisfied with the Secretary's final decision may seek judicial review.  42 U.S.C. § 1395ff(b)(1)(A); 42 C.F.R. §§ 405.1130, 405.1136.

Though an initial determination may be reviewed and revised under this procedural framework, it may also be reviewed and revised under a process known as a "reopening." Indeed, Congress authorized the Secretary to reopen or revise any initial determinations or reconsidered determinations under the guidelines set forth in the regulations.  42 U.S.C. § 1395ff(b)(1)(G).  Pursuant to this authority, the Secretary has promulgated regulations delineating the procedural mechanisms for reopening initial determinations.  42 C.F.R. § 405.980.  A reopening may occur by a contractor to revise an initial determination or redetermination which has resulted in an overpayment or underpayment, by a QIC to revise the reconsideration, by an ALJ to revise the hearing decision, or by the MAC to revise the hearing or

review decision. *Id.* at § 405.980(a)(1).[2]  A contractor may reopen an initial determination or redetermination on its own motion within one year from the date of the initial determination or redetermination for any reason and within four years from the date of the initial determination or redetermination for "good cause." *Id.* at § 405.980(b)(1)-(2).  "Good cause" may be established when (1) new and material evidence exists that either was not available or known at the time of the determination or decision or that may result in a different conclusion or (2) the evidence considered in making the determination or decision clearly shows on its face that an obvious error was made at the time of the determination or decision. *Id.* at § 405.986(a).  Reopenings may also occur at any time to remedy a decision procured by fraud or similar fault, to correct a clerical error, or to effectuate a decision issued under the appellate process.  *Id.* at § 405.980(b)(3)-(5).

Although the regulations set forth limitations on reopening a determination or decision, the regulations explicitly provide that the "decision on whether to reopen is binding and not subject to appeal."  *Id.* at § 405.980(a)(5).  Further, the regulations identify actions which do not constitute initial determinations and are therefore not appealable under the administrative framework established by the Secretary.  *Id.* at § 405.926.  Specifically, the regulations exclude "[a] contractor's, QIC's, ALJ's, or MAC's determination or decision to reopen or not to reopen an initial determination, redetermination, reconsideration, hearing decision, or review decision" from actions which constitute initial determinations and thus from appeal under the administrative framework.  *Id.* at § 405.926(l).

---

[2]  A provider may also request a reopening.  42 C.F.R. § 405.980(c).

B.  *Procedural Background*

On October 23, 2003, a patient (the "beneficiary") presented to Mease seeking medical attention, with his chief complaint chest pains.  R. 123, 272.  After furnishing inpatient hospitalization services to the beneficiary, Mease billed Medicare.  Initially, Medicare issued payment for the claim in the amount of $1,645.00, as billed, on December 5, 2003.  On August 6, 2007, however, the initial determination was reopened as a result of the Recovery Audit Contractor ("RAC") demonstration program.  The Secretary implemented the RAC demonstration program pursuant to the Medicare Prescription Drug, Improvement, and Modernization Act of 2003 ("MMA"), Pub. L. No. 108-173, § 306, 117 Stat. 2066, 2256.  With the passage of the MMA, Congress authorized the Secretary to conduct a demonstration project in which the Secretary contracts with RACs to conduct independent audits and evaluations to identify Medicare underpayments and overpayments and to recoup overpayments.[3]  Under this program, CMS retains RACs to ensure the integrity of claims paid by Medicare.  *Id.*  In reviewing claims, RACs may conduct audit and recovery activities relating to Medicare payments for a period not more than four fiscal years prior to the fiscal year on which the RAC begins the review.  Tax Relief and Health Care Act of 2006, Pub. L. No. 109-432, § 302, 120 Stat. 2922, 2991 (codified at 42 U.S.C. § 1395ddd(h)).  RACs receive payment on a contingent basis for collecting overpayments from amounts collected for overpayments.  *Id.*

Here, the RAC designated for the State of Florida, HealthDataInsights ("HDI"), reopened the initial determination after performing an automated review of claims and requested Mease's

---

[3]  Though initially implemented in a few states and slated for a three-year duration beginning on March 28, 2005, and ending on March 27, 2008, Congress has since made the RAC program permanent and extended it to all fifty states.  *Id.*; Tax Relief and Health Care Act of 2006, Pub. L. No. 109-432, § 302, 120 Stat. 2922, 2991 (codified at 42 U.S.C. § 1395ddd(h)).

records regarding the treatment of the beneficiary.  R. 174-76, 251.  After reviewing Mease's records, HDI issued a revised determination finding the inpatient services rendered to the beneficiary by Mease were not reasonable and necessary and therefore improperly billed to Medicare.  R. 170-72.  HDI issued a "Notice of Incorrect Payment Determination and Pending Adjustment" on October 5, 2007, informing Mease an adjustment would be made for an overpayment made to Mease for the services rendered to the beneficiary.  R. 170-72, 253-54.

Subsequently, Mease sought administrative review of the revised determination.  *See* 42 C.F.R. § 405.984.  First, Mease appealed HDI's decision to the FI, First Coast Service Options ("FCSO").  Mease requested redetermination arguing HDI did not have the authority to open or review the claim, which was older than one year, because good cause did not exist for opening or investigating the claim.  R. 158-59, 255-56.  Upon redetermination, FCSO affirmed the overpayment determination finding the inpatient services not covered based on the doctor's order for observation level of service only; it did not, however, address Mease's argument regarding whether good cause existed for opening or investigating the claim.  R. 155-56, 258.  Mease then appealed the redetermination decision to the QIC, Maximus.  R. 149-52, 260-66.  Its main contention on appeal involved HDI's authority to review cases older than one year without first establishing good cause and that good cause did not exist to investigate the claim at issue.  *Id.* On reconsideration, Maximus rendered another unfavorable decision as to Mease.  R. 132-45. Maximus concluded the inpatient services provided to the beneficiary were not covered by Medicare because the beneficiary "could have had serial cardiac enzymes performed on an observational level of care," which does not meet the Medicare coverage criteria for inpatient hospital admission.  R. 133-35. Further, Maximus found Mease responsible for the payment of the inpatient hospital admission because it knew or could reasonably have been expected to

know that Medicare payment for the service or item would be denied. *Id.* Similar to FCSO's decision, this decision did not address whether good cause existed to initially open and investigate the claim.

Following the unfavorable reconsideration decision, Mease requested a hearing before an ALJ. R. 126-30. In its request for hearing, Mease listed the following as reasons for disagreement with Maximus's decision: (1) HDI did not have the authority to review the claim which was older than one year, (2) FCSO did not explain their decision or provide rationale for their decision, and (3) Maximus did not use information available at the time of admission as required by the Medicare Benefit Policy Manual, Chapter 1, Section 10. *Id.* After conducting a hearing, the ALJ rendered a decision unfavorable to Mease. R. 44-55, 310-20. Upon review, the ALJ found the inpatient hospital services not medically reasonable and necessary and, thus, not covered by Medicare. Accordingly, the ALJ upheld the overpayment determination and concluded recovery of the overpayment could not be waived as to Mease. R. 54. In her decision, the ALJ stated "HealthData did not assert nor establish good cause rationale to reopen the claims under 42 U.S.C. § 405.980" but held the decision on whether to reopen was final and not subject to appeal pursuant to 42 C.F.R. § 405.980(5). R. 51.

Finally, Mease requested the MAC review the ALJ's unfavorable decision. R. 3-38. Mease set forth two reasons for its appeal; namely, (1) the MAC should waive Mease's liability because Mease was without fault in creating the overpayment and the ALJ ruling did not address the timeliness issue regarding HDI's identification of the overpayment subsequent to the third year following the year in which Medicare initially paid the claim and (2) the ALJ unnecessarily deferred to a prior MAC decision in holding that the HDI's decision to reopen a determination was final and not subject to review despite the fact that HDI did not provide a good cause

rationale for reopening the determination more than one year after the initial determination. R. 4-5, 15-18. The MAC modified the ALJ's decision "to clarify the rationale for finding the appellant liable for the overpayment." R. 3. And it concluded neither it nor the ALJ possessed authority to review HDI's decision to reopen the determination. Accordingly, it determined the overpayment decision and liability decision should be upheld as Mease did not raise any exceptions to the ALJ's findings in those regards, and the overpayment recoupment could not be waived because Mease was not without fault when it billed and received payment for services not supported by the medical evidence or the hospital's own care plan. R. 8-12. In reaching the decision on reopening, the MAC stated:

> A contractor's decision on whether to reopen is final and not subject to administrative review. Moreover, the parallel regulation at 42 C.F.R. § 405.926(1) states that a contractor's determination to reopen or not to reopen is not an initial determination, and is, therefore, not appealable. Therefore, neither the ALJ, nor the Council has the authority to review the RAC's decision to reopen the determination. The restriction against reviewing the contractor's decision whether to reopen an initial determination extends to whether or not the contractor met the good cause standards for reopening set forth in 42 C.F.R. § 405.980(b)(2). CMS has expressly stated that the enforcement mechanism for good cause standards lies within CMS's evaluation and monitoring of contractor performance, not the administrative appeals process. Thus, the Council finds that the ALJ did not err in concluding that she did not have the authority to examine whether there was good cause for reopening the claim after one year from the date of the initial determination.

R. 9 (internal citations omitted). The decision by the MAC constitutes the final decision of the Secretary from which Mease now appeals and seeks judicial review in this Court. *See* docs. 1, 17. *See* 42 U.S.C. § 1395ff(b)(1)(A).

### C. Discussion

#### 1. Perspective

The crux of the parties' dispute involves the interpretation and application of the

regulations relating to the reopening of Medicare determinations dealing with overpayments or underpayments. *See* 42 C.F.R. §§ 405.980, 405.926(l). As already noted, Congress granted the Secretary broad authority to prescribe such regulations as necessary to effectuate the administration of the Medicare program. 42 U.S.C. § 1395hh(a)(1) ("The Secretary shall prescribe such regulations as may be necessary to carry out the administration of the insurance programs under this subchapter."). In carrying out that mandate, the Secretary established a procedure for reopening a determination after one year but within four years from the initial determination or redetermination, which incorporates a "good cause" provision. 42 C.F.R. § 405.980(b)(2). At the same time, the Secretary made clear that a decision on whether to reopen is binding and not subject to appeal regardless of the amount of time that had elapsed between the initial determination or redetermination and the reopening. *Id.* at §§ 405.980(a)(5), 405.926(l). By this action, Mease challenges the Secretary's interpretation of the foregoing regulations.[4] Mease argues a strict standard should apply allowing for little to no deference as to an agency's construction of a statute.[5] In contrast, the Secretary posits a highly deferential standard arguing the issues involved in this case focus upon the agency's interpretation of a regulation promulgated by the Secretary rather than a statute enacted by Congress. As discussed

---

[4] The parties agreed to limit the Court's consideration to cross-motions for summary judgment and review of the Certified Administrative Record (doc. 7). Accordingly, as no issues relating to any material fact exist, summary judgment is appropriate. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The parties, however, dispute the standard of review regarding the appropriate deference to afford the Secretary's interpretation of the regulations at issue.

[5] *See Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944) (finding the deference given to an agency's interpretation depends upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all factors which give the agency power to persuade if lacking power to control).

below, the more deferential standard applies in this instance.

When Congress explicitly leaves a gap for an agency to fill, "there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation," with any ensuing regulation given controlling weight unless procedurally defective, arbitrary or capricious in substance, or manifestly contrary to the statute.  *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843-44 (1984).  In *United States. v. Mead Corp.*, 533 U.S. 218, 226-27 (2001), the Supreme Court reiterated this principle:

> [A]dministrative implementation of a particular statutory provision qualifies for *Chevron* deference when it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority.  Delegation of such authority may be shown in a variety of ways, as by an agency's power to engage in adjudication or notice-and-comment rulemaking, or by some other indication of a comparable congressional intent.

Furthermore, as the Supreme Court has repeatedly recognized, courts may properly resort to the views of an agency implementing a statute for guidance and should in fact afford considerable weight to an agency's construction of a statutory scheme it is entrusted to administer because the agency's interpretations are founded upon a body of experience and informed judgment.  *Id.* at 227-28 (citations omitted).  That is the case here.  Congress has bestowed broad authority upon the Secretary to promulgate regulations as may be necessary to carry out the Medicare program and expressly delegated authority to the Secretary to reopen or revise any initial determination or redetermination under guidelines established by the Secretary in regulations.  42 U.S.C. §§ 1395ff(a)(1), 1395ff(b)(1)(G), 1395hh(a).

Where, as here, an agency interprets its own regulations, that interpretation receives "substantial deference."  *Thomas Jefferson Univ.,* 512 U.S. at 512 (citation omitted).  Since the reopening guidelines, including the good cause requirement, exist only by grace of the Secretary,

10

the instant case presents a prime example of an instance where the agency's interpretation should receive substantial deference. *Id.*; *see also Your Home Visiting Nurses Services, Inc. v. Shalala,* 525 U.S. 449, 453-54 (1999) (finding the right of a provider to seek reopening exists only by the grace of the Secretary and therefore affording the Secretary's reasonable interpretation of the statute great deference). Indeed, courts must afford the agency's interpretation "controlling weight unless it is plainly erroneous or inconsistent with the regulation." *Thomas Jefferson Univ.*, 512 U.S. at 512 (quotation and citation omitted). Accordingly, courts must not decide which among competing interpretations bests serves the regulatory purpose. *Id.* Instead, courts must defer to the Secretary's interpretation unless the regulation's plain language or other indications of the Secretary's intent at the time of the regulation's promulgation compel an alternative reading. *Id.* A consistently-held agency interpretation, like the one put forth by the Secretary in this instance, receives greater deference than one that conflicts with prior interpretations. *Id.* at 515.

### 2. *Mease's regulatory argument*

Mease appeals to this Court for a finding that the regulations regarding the Medicare reopening process necessarily invite administrative review of the propriety of HDI's decision to reopen the determination at issue. In doing so, Mease contends: HDI did not have good cause to reopen and revise the initial determination; federal law does not prohibit administrative review on the issue of whether HDI had good cause to reopen and revise the initial determination; and the Secretary's interpretation prohibiting administrative review on the good cause issue is improper and entitled to no deference. More specifically, Mease contends administrative review provides the appropriate mechanism for determining whether HDI had good cause to reopen the determination. Mease argues the regulations and other authorities relied upon throughout the

administrative process address only the decision *whether* to reopen an initial determination and not whether a contractor has complied with the guidelines established by the Secretary, including any conditions precedent to reopening.   Further, Mease asserts a RAC's decision on whether to reopen goes only to the literal act of reopening as opposed to the condition precedent of whether good cause exists to reopen.   Mease argues to hold otherwise would effectively leave providers without any direct remedy, even in instances where a contractor fails to establish good cause for reopening.   I do not find these arguments persuasive given the deference to be afforded the Secretary's interpretation of the statutory scheme and regulatory framework.   And Mease's position is further undercut by the fact that Mease does not take issue with the substantive determination regarding the finding of overpayment, nor does it argue that the procedural mechanisms set forth by the Secretary fail to adequately and fairly give providers an opportunity to appeal the substantive decisions upon reopening.   Mease would be hard-pressed to make those arguments given that, at the hearing conducted before the ALJ, the doctor representing Mease's interests conceded that the beneficiary "did not meet inpatient status criteria" for Medicare reimbursement.   R. 318-19.   Furthermore, given the multiple levels of review available to a provider after a reopening of an initial determination, the Secretary provides ample opportunities for review of the substantive determination.   *See* 42 C.F.R. § 405.984.

As the Secretary contends, however, the regulations clearly indicate the decision to reopen, including the existence of good cause to reopen, is not subject to administrative appellate review.   42 C.F.R. §§ 405.980(a)(5) and 405.926(l).   Under 42 C.F.R. § 405.980(a)(5), "the contractor's, QIC's, ALJ's or MAC's decision on whether to reopen is binding and not subject to appeal."   If the reopening occurs within one year after the date of the initial determination or redetermination, a contractor may reopen for any reason.   *Id.* at § 405.980(b)(1).   After the one-

12

year mark, however, a contractor may reopen the initial determination or redetermination for good cause. *Id.* at § 405.980(b)(2). Under this regulatory scheme, the decision to reopen after one year from the initial determination or redetermination necessarily includes the question of good cause. As part and parcel to the decision whether to reopen, the contractor's decision on whether good cause existed for purposes of reopening is binding and non-appealable under both 42 C.F.R §§ 405.980(a)(5) and 405.926(l). The fact that the Secretary classified the decision whether to reopen as "binding" makes clear that the decision may not be reconsidered even after a revised determination has been made. By the regulations, promulgated pursuant to the broad authority granted her by Congress, the Secretary has foreclosed the appeal of the decision to reopen regardless of any good cause requirement. The regulations do not foreclose a provider appealing the substantive result of the reopening, typically, as in this instance, a finding of overpayment. A provider may simply not appeal the fact of the reopening. Given the foregoing, the Secretary's interpretation is neither plainly erroneous nor inconsistent with the regulations and is, in fact, well within the bounds of reasonable interpretation. *See Thomas Jefferson Univ.*, 512 U.S. at 512; s*ee also Your Home*, 525 U.S. at 455 (finding a decision *not* to reopen generally committed to the discretion of an agency by law and therefore exempt from judicial review).

The plain language of the regulations supports this conclusion. Under 42 U.S.C §§ 1395ff(b)(1)(G) and 1395hh(a)(1), Congress granted the Secretary broad authority to prescribe regulations to effectuate the Medicare program and to establish a process for reopenings. Pursuant to and consistent with that authority, the Secretary created the good cause standard for reopenings occurring more than a year after an initial determination or redetermination and determined that the decision to reopen would not be subject to the administrative appellate process. *See* 42 U.S.C §§ 1395ff(b)(1)(G) and 1395hh(a)(1). Had the Secretary decided to omit

the good cause requirement or allow for an administrative appeal of a reopening decision, she would have the discretion to do so consistent with the authority bestowed upon her by Congress. *Id.* Instead, the Secretary used specific language to define the contours of the reopening process and to address the unavailability of any subsequent appeals of the reopening decision. *See* 42 C.F.R. §§ 405.980, 405.926; *see Guidry v. Sheet Metal Workers Nat. Pension Fund*, 493 U.S. 365, 375 (1990) (noting the canon of statutory construction that where no clear intention otherwise exists, a specific statute will not be controlled or nullified by a general one).

In arguing that 42 C.F.R. § 405.980 does not prevent the Secretary from reviewing the question of good cause, Mease attempts to distinguish between "initial determinations" and "issues" asserting that the Secretary provided for raising, developing and reviewing issues beyond the determination throughout the course of the administrative appellate process. *See, e.g.,* 42 C.F.R. § 405.948 (providing that during a redetermination a contractor may raise and develop new issues relevant to the claims in a particular case) and 42 C.F.R § 405.968 (providing a "reconsideration consists of an independent, on-the-record review of an initial determination, including the redetermination and all issues related to the payment of the claim). Further, Mease contends the "general rules" identified in 42 C.F.R. § 980(a), which include the directive that decisions on whether to reopen are binding and not subject to appeal, do not speak to the specific provisions of 42 C.F.R. § 405.980(b), including the good cause requirement. Similarly, Mease argues 42 C.F.R. § 405.926(l) does not apply to the good cause determination, despite its pronouncement that decisions whether to reopen do not constitute initial determinations and are therefore non-appealable, because the provision does not explicitly reference good cause or expressly extend to the good cause requirement found in a different regulation.

Simply put, Mease argues none of the prohibitions against appeal of a decision to reopen

apply to the good cause requirement. *See* 42 C.F.R. §§ 405.980(a), 405.926(l). Under Mease's interpretation, therefore, a provider would not only be permitted to appeal the substance of the revised determination through the normal Medicare appeals process but would additionally be permitted to appeal the basis for every reopening decision. Construing the regulations in line with Mease's interpretation does not comport with the plain language of either 42 C.F.R. § 405.980(a) or § 405.926(l). Indeed, if the Court accepted Mease's interpretations, the specific provisions of both 42 C.F.R. §§ 405.980(a) and 405.926(l) regarding the binding nature and non-appealability of the reopening decision would be rendered entirely meaningless. In contrast, under the Secretary's interpretation, all the provisions, including the good cause provision, would be afforded their proper and logical meaning.

Moreover, the Secretary's position on this regulatory issue has been consistent; hence, the interpretation is due greater deference. *See Fla. Manufactured Housing Ass'n, Inc. v. Cisneros*, 53 F.3d 1565, 1574 (11th Cir. 1995) (*citing Thomas Jefferson Univ.*). Although Mease takes issue with the Secretary's review and handling of the reopening decisions, the Secretary has explicitly and repeatedly determined the decision to reopen and the determination of whether good cause exists are binding and not subject to appeal through the administrative process. Rather than providing a private cause of action through the administrative appellate process, the Secretary maintains internal enforcement procedures designed to enforce the good cause standard.[6] *See* Dep't of Health and Human Servs., "Changes to the Medicare Claims Appeals

---

[6] As the Secretary correctly points out, Mease's inability to enforce the good cause provision through administrative review does not necessarily equate to lack of enforcement of the good cause provision or to a finding that good cause did not exist as to the reopening in this instance. Furthermore, the internal procedures do not make way for an opening of the proverbial floodgates to reopenings which violate the good cause provision, as Mease suggests.

Procedures; Interim Final Rule with Comment Period," 2005 WL 520711, 70 Fed. Reg. 11420, 11453 (Mar. 8, 2005).[7]   Despite Mease's suggestion of vacillation by the Secretary, the Secretary consistently offered this interpretation throughout the promulgation process and continues to advance the same interpretation.  *See id.*; *see also* Dep't of Health and Human Servs., "Medicare Program: Changes to the Medicare Claims Appeal Procedures; Final Rule," 2009 WL 4626149, 74 Fed. Reg. 65296, 65312 (Dec. 9, 2009).[8]   The Secretary's interpretation is due substantial deference. *Thomas Jefferson Univ.*, 512 U.S. at 512.

---

[7] In 2005, in response to concerns regarding the enforcement of the good cause standard, the Secretary responded:

> The regulations require that contractors abide by the good cause standard for reopening actions after one year from the date of the initial or revised determination. CMS assesses a contractor's compliance with Federal laws, regulations and manual instructions during audits and evaluations of the contractors' performance. Thus, the necessary monitoring and enforcement mechanisms are already in place.

Dep't of Health and Human Servs., "Changes to the Medicare Claims Appeals Procedures; Interim Final Rule with Comment Period," 2005 WL 520711, 70 Fed. Reg. 11420, 11453 (Mar. 8, 2005)

[8] Again, in response to concerns regarding enforcement of the good cause standard for reopening claims, the Secretary responded:

> Contractors are required to follow Federal laws, regulations and manual instructions in their business operations.  As noted in the interim final rule in response to a similar comment on the proposed rule (70 FR 11453), our regulations require that contractors abide by the good cause standard for reopening actions as set forth in § 405.980(b) and § 405.986.  CMS conducts audits and evaluations of contractor performance in order to assess compliance with Medicare policies.  Thus, the necessary monitoring and enforcement mechanisms are already in place and we do not believe it necessary to add enforcement provisions to these regulations.

Dep't of Health and Human Servs., "Medicare Program: Changes to the Medicare Claims Appeal Procedures; Final Rule," 2009 WL 4626149, 74 Fed. Reg. 65296, 65312.

16

Recently, the Northern District of California decided the identical issue presented in this action, *i.e.*, the deference to afford the Secretary's interpretation of the statutes and regulations pertaining to the Medicare reopening process. *See Hospital Committee for the Livermore-Pleasanton Areas v. Johnson*, 2010 WL 1222764 (N.D. Cal. Mar. 24, 2010). In the main, the *Livermore-Pleasanton* court determined the deferential *Thomas Jefferson* standard applied to the Secretary's interpretation of 42 C.F.R. § 405.980. *Id.* at *9. Accordingly, the court upheld the Secretary's interpretation finding the regulations contained no provision for enforcement of the good cause standard set forth in 42 C.F.R. § 405.980(b)(2) through the administrative appellate process and determining the decision to reopen is not appealable, including the question of whether good cause existed to reopen. *See id.* at *7-*9.

In upholding the Secretary's interpretation, the *Livermore-Pleasanton* court squarely addressed the contention that the decision regarding reopening is outside the Secretary's area of expertise and, thus, the Secretary's interpretation should not be afforded any deference. The *Livermore-Pleasanton* court found some support for that proposition but ultimately concluded the deferential *Thomas Jefferson* standard applied. *Livermore-Pleasanton,* 2010 WL 1222764, at *5-*9. In reaching that conclusion, the court looked to the *Your Home* decision in which the Supreme Court addressed the appropriate deference to afford the Secretary regarding the issue of reopenings under the Medicare framework. *See* 525 U.S. at 449. As the *Livermore-Pleasanton* court noted, in finding the Secretary's interpretation reasonable in *Your Home*, "the Supreme Court deferred to an agency interpretation of a statute even though it did not appear that any agency expertise was involved in making the interpretation." *Livermore-Pleasanton,* 2010 WL 1222764, at *6. Given the deference afforded by the Supreme Court to the Secretary in a case involving reopenings under the Medicare context, albeit as to the decision not to reopen rather

17

than the decision to reopen, the *Livermore-Pleasanton* court afforded the Secretary the same deference. *Id.* I find this reasoning persuasive.

In sum, the Secretary's interpretation of the Medicare reopening regulations, promulgated pursuant to the broad authority granted her by Congress, is neither plainly erroneous nor inconsistent with the regulations. *See Thomas Jefferson Univ.*, 512 U.S. at 512. The federal regulations promulgated under the authority vested in the Secretary clearly indicate the decision to reopen is not subject to review during the administrative appellate process and cannot be raised by the provider. Based on the Secretary's consistently-held interpretation on the issues, which is entitled to great deference, Mease's position is not well taken.

### 3. *Constitutionality*

Alternatively, Mease contends even if the Court accepts the Secretary's interpretation, the Secretary's refusal to review whether HDI had good cause to reopen and revise the initial determination deprives Mease of its due process. Specifically, Mease argues the Secretary's interpretation of 42 C.F.R. § 405.980(a)(5) is facially unconstitutional under the Fifth Amendment to the United States Constitution or, at the very least, unconstitutional as applied to Mease because it does not provide a means for private enforcement or administrative appellate review of a RAC's good cause for reopening an initial determination rendered more than one year earlier. To that end, Mease claims it has a statutorily-created property interest in the continued receipt of social welfare benefits, such as Medicare reimbursement. *See* doc. 17, p. 26 (*citing Mathews v. Eldridge*, 424 U.S. 319, 332 (1976)).

These arguments are not persuasive. With the overpayment determination related to the one claim at issue, the Secretary has not denied Mease of any purported property interest in continued receipt of Medicare reimbursement payments. Notably, Mease has not lost the ability

18

to seek reimbursement from Medicare for any other claims which meet the applicable requirements. Rather, the Secretary has merely found a single Medicare payment totaling $1,645.00 made in error as to one claim. More importantly, by its very definition, the overpayment consists of reimbursement money to which Mease was never entitled in the first instance, a fact that it concedes. *See* R. 318-19 (admission of doctor, who represented Mease's interests before the ALJ, asserting the services provided to the beneficiary did not qualify as inpatient services under the Medicare guidelines). Mease has not established an entitlement to or a property interest in Medicare reimbursement money it admittedly received in error, nor could it. Here, as in *Livermore-Pleasanton*, the only purported "right" denied to Mease involved the requisite showing of good cause to reopen after one year. 2010 WL 1222764, at *9. In promulgating the regulations, the Secretary had the discretion to omit the good cause requirement entirely and opt instead to place only time limitations on the reopening process. Her inclusion of a good cause requirement did not create a constitutional right for providers which could be privately enforced. Indeed, had the Secretary omitted the good cause requirement, she would not have violated the mandates of due process. In short, Mease has failed to establish any property interest for which the Secretary has deprived it without due process of law.

Notwithstanding, even if Mease could establish a property interest, the reopening of the claim does not deprive Mease, or any other provider, of any procedural due process guarantees. Once the initial determination has been reopened, providers may pursue administrative and judicial review for unfavorable *substantive* decisions. *See* 42 C.F.R. § 405.984. Though Mease may not challenge the decision to reopen, including the underlying finding of good cause, by way of the process detailed above, Mease has multiple levels of review to contest the substance of an overpayment finding rendered at any point in the administrative process. The

administrative procedural mechanisms in place necessarily afford Mease appropriate and ample safeguards.  Accordingly, as Mease has not shown either a property interest or a deprivation of any procedural due process guarantees, the Court should not find the regulations relating to reopening or the Secretary's interpretation of those regulations unconstitutional.

   *D.  Conclusion*

   For the foregoing reasons, it is hereby

RECOMMENDED:

   1.  Mease's motion for summary judgment (doc. 17) be denied.

   2.  The Secretary's cross-motion for summary judgment (doc. 19) be granted.

IT IS SO REPORTED at Tampa, Florida on July 26, 2010.

_Mark A. Pizzo_
MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE

## **NOTICE TO PARTIES**

   Failure to file written objections to the proposed findings and recommendations contained in this report within 14 days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal.  *See* 28 U.S.C. § 636(b)(1).


cc:    Hon. Steven D. Merryday
       Counsel of Record

## **APPENDIX**

| **Term** | **Acronym** |
| --- | --- |
| Recovery Audit Contractor | RAC |
| Fiscal Intermediary | FI |
| Qualified Independent Contractor | QIC |
| Administrative Law Judge | ALJ |
| Medicare Appeals Council | MAC |
| HealthDataInsights (RAC) | HDI |
| First Coast Service Options (FI) | FCSO |